BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SARAH E. EDWARDS
ALLISON L. MCGUIRE
MICHAEL BACHARACH
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
    300 N. Los Angeles St., Suite 2001
    Los Angeles, California 90012
    Telephone:  (202) 913-4782
              (202) 913-4770
              (202) 297-9384
    E-mail:  sarah.edwards@usdoj.gov
          allison.mcguire@usdoj.gov
          michael.bacharach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>SUSANNA HARUTYUNYAN,<br><br>        Defendant. | No. CR 2:24-348-SVW-4<br><br>PLEA AGREEMENT FOR DEFENDANT<br>SUSANNA HARUTYUNYAN |

    1.    This constitutes the plea agreement between SUSANNA

HARUTYUNYAN ("defendant"), the United States Attorney's Office for

the Central District of California ("the USAO"), and the Fraud

Section of the Criminal Division of the United States Department of

Justice (collectively with the USAO, "the United States") in the

above-captioned case.  This agreement is limited to the United States

and cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory authorities.

1    <u>DEFENDANT'S OBLIGATIONS</u>

2    2.  Defendant agrees to:

3        a.  At the earliest opportunity requested by the United

4    States and provided by the Court, appear and plead guilty to count

5    eighteen of the indictment in <u>United States v. Susanna Harutyunyan</u>,

6    CR No. 2:24-348-SVW-4, which charges defendant with money laundering

7    in violation of 18 U.S.C. § 1957.

8        b.  Not contest facts agreed to in this agreement.

9        c.  Abide by all agreements regarding sentencing contained

10   in this agreement.

11       d.  Appear for all court appearances, surrender as ordered

12   for service of sentence, obey all conditions of any bond, and obey

13   any other ongoing court order in this matter.

14       e.  Not commit any crime; however, offenses that would be

15   excluded for sentencing purposes under United States Sentencing

16   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

17   within the scope of this agreement.

18       f.  Be truthful at all times with the United States

19   Probation and Pretrial Services Office and the Court.

20       g.  Pay the applicable special assessment at or before the

21   time of sentencing unless defendant has demonstrated a lack of

22   ability to pay such assessment.

23       h.  Defendant agrees that any and all criminal debt

24   ordered by the Court will be due in full and immediately.  The

25   government is not precluded from pursuing, in excess of any payment

26   schedule set by the Court, any and all available remedies by which to

27   satisfy defendant's payment of the full financial obligation,

28   including referral to the Treasury Offset Program.

Docusign Envelope ID: 5C8BDE0D-732A-42AC-9026-0ABCB858C01A

1             i.   Complete the Financial Disclosure Statement on a form

2 provided by the United States and, within 30 days of defendant's

3 entry of a guilty plea, deliver the signed and dated statement, along

4 with all of the documents requested therein, to the United States by

5 either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

6 USAO Financial Litigation Section at 300 North Los Angeles Street,

7 Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's

8 ability to pay criminal debt shall be assessed based on the completed

9 Financial Disclosure Statement and all required supporting documents,

10 as well as other relevant information relating to ability to pay.

11           j.   Authorize the United States to obtain a credit report

12 upon returning a signed copy of this plea agreement.

13           k.   Consent to the United States inspecting and copying

14 all of defendant's financial documents and financial information held

15 by the United States Probation and Pretrial Services Office.

16           l.   Defendant understands and acknowledges that as a

17 result of pleading guilty pursuant to this agreement, defendant will

18 be excluded from Medicare, Medicaid, and all Federal health care

19 programs.  Defendant agrees to complete and execute all necessary

20 documents provided by the United States Department of Health and

21 Human Services, or any other department or agency of the federal

22 government, to effectuate this exclusion within 60 days of receiving

23 the documents.  This exclusion will not affect defendant's right to

24 apply for and receive benefits as a beneficiary under any Federal

25 health care program, including Medicare and Medicaid.

26    3.   Defendant further agrees:

27           a.   To immediately and irrevocably forfeit, on behalf of

28 defendant and any entity in which defendant has held an ownership

1   interest or has served as an officer, director, manager, partner,

2   trustee, or other representative (which entities include, without

3   limitation, the 2022 Harutyunyan Family Trust; Winnetka Dental Lab;

4   MJ Home Health Services, Inc.; Healthy Life Hospice, Inc.; Prayer of

5   Hope Hospice; Dynamic Hospice Care, Inc.; and House of Angels

6   Hospice, Inc.) to the United States of America all right, title, and

7   interest of defendant in and to any and all monies, properties,

8   and/or assets of any kind, derived from or acquired as a result of

9   the illegal activity to which defendant is pleading guilty,

10  specifically including, but not limited to, the following:

11          i.   $75,447.75 in funds seized from Banc of

12  California account number ending in x8303;

13          ii.  $2,626,324.73 in funds seized from Banc of

14  California account ending in x9860;

15          iii. The real property located at 16817 Rayen Street,

16  Northridge, California, Assessor's Parcel Number 2688-027-001;

17          iv.  $218,571.07 in funds seized from Chase Bank

18  Account ending in x8151; and

19          v.   One 2019 Mercedes-Benz AMG GT63 S, Vehicle

20  Identification Number WDD7X8KB0KA006620 (collectively, with items i-

21  iv above, the "Forfeitable Property").

22       b.   To the Court's entry of an order of forfeiture at or

23  before sentencing with respect to the Forfeitable Property and to the

24  forfeiture of the property.

25       c.   That the Preliminary Order of Forfeiture shall become

26  final as to the defendant upon entry.

27       d.   To take whatever steps are necessary to pass to the

28  United States clear title to the Forfeitable Property, including,

4

Docusign Envelope ID: 568BDE0D-772A-42AC-9026-0ABCB858C01A

1 without limitation, the execution of a consent decree of forfeiture

2 and the completing of any other legal documents required for the

3 transfer of title to the United States.

4          e.   Not to contest any administrative forfeiture

5 proceedings or civil judicial proceedings commenced against the

6 Forfeitable Property.  If defendant submitted a claim and/or petition

7 for remission for all or part of the Forfeitable Property on behalf

8 of herself or any other individual or entity, defendant shall and

9 hereby does withdraw any such claims or petitions, and further agrees

10 to waive any right she may have to seek remission or mitigation of

11 the forfeiture of the Forfeitable Property.  Defendant further waives

12 any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

13          f.   Not to assist any other individual in any effort

14 falsely to contest the forfeiture of the Forfeitable Property.

15          g.   Not to claim that reasonable cause to seize the

16 Forfeitable Property was lacking.

17          h.   To prevent the transfer, sale, destruction, or loss of

18 the Forfeitable Property to the extent defendant has the ability to

19 do so.

20          i.   That forfeiture of Forfeitable Property shall not be

21 counted toward satisfaction of any special assessment, fine,

22 restitution, costs, or other penalty the Court may impose.

23          j.   To the entry as part of defendant's guilty plea of a

24 personal money judgment of forfeiture against defendant in the amount

25 of $785,950.00, which sum defendant admits was derived from proceeds

26 traceable to the violations described in the factual basis of the

27 plea agreement.  Defendant understands that the money judgment of

28

1  forfeiture is part of defendant's sentence, and is separate from any

2  fines or restitution that may be imposed by the Court.

3       k.   At or before the time of sentencing, to satisfy the

4  defendant's personal money judgment of forfeiture in the amount of

5  $785,950.00 by delivering a cashier's check or money order to the

6  U.S. Attorney's Office, Asset Forfeiture and Recovery Section, 312 N.

7  Spring Street, 11th Floor, Los Angeles, CA 90012.  The cashier's check

8  or money order shall be payable to "U.S. Marshalls Service".

9       l.   With respect to any criminal forfeiture ordered as a

10  result of this plea agreement, defendant waives: (1) the requirements

11  of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

12  notice of the forfeiture in the charging instrument, announcements of

13  the forfeiture sentencing, and incorporation of the forfeiture in the

14  judgment; (2) all constitutional and statutory challenges to the

15  forfeiture (including by direct appeal, habeas corpus or any other

16  means); and (3) all constitutional, legal, and equitable defenses to

17  the forfeiture of the Forfeitable Property in any proceeding on any

18  grounds including, without limitation, that the forfeiture

19  constitutes an excessive fine or punishment. Defendant acknowledges

20  that forfeiture of the Forfeitable Property is part of the sentence

21  that may be imposed in this case and waives any failure by the Court

22  to advise defendant of this, pursuant to Federal Rule of Criminal

23  Procedure 11(b)(1)(J), at the time the Court accepts defendant's

24  guilty plea.

25                  THE UNITED STATES' OBLIGATIONS

26       4.   The United States agrees to:

27       a.   Not contest facts agreed to in this agreement.

28

                                6

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    Not seek a sentence of imprisonment above the high end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 14 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSE</u>

5.    Defendant understands that for defendant to be guilty of the crime charged in count eighteen, that is, engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957, the following must be true: (a) defendant knowingly engaged or attempted to engage in a monetary transaction; (b) defendant knew that the

1  transaction involved criminally derived property; (c) the property

2  had a value greater than $10,000; (d) the property was in fact

3  derived from health care fraud; and (e) the transaction occurred in

4  the United States.

5                       PENALTIES AND RESTITUTION

6      6.    Defendant understands that the statutory maximum sentence

7  that the Court can impose for a violation of Title 18, United States

8  Code, Section 1957, is: 10 years' imprisonment; a three-year period

9  of supervised release; a fine of not more than twice the value of the

10  property involved in the transaction; and a mandatory special

11  assessment of $100.

12      7.    Defendant understands that defendant will be required to

13  pay full restitution to the victim(s) of the offenses to which

14  defendant is pleading guilty.  Defendant agrees that, in return for

15  the United States' compliance with its obligations under this

16  agreement, the Court may order restitution to persons other than the

17  victim(s) of the offenses to which defendant is pleading guilty and

18  in amounts greater than those alleged in the count to which defendant

19  is pleading guilty.  In particular, defendant agrees that the Court

20  may order restitution to any victim of any of the following for any

21  losses suffered by that victim as a result: (a) any relevant conduct,

22  as defined in U.S.S.G. § 1B1.3, in connection with the offenses to

23  which defendant is pleading guilty; and (b) any counts dismissed and

24  charges not prosecuted pursuant to this agreement as well as all

25  relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with

26  those counts and charges.  The defendant agrees that the applicable

27  amount of restitution is at least $2,822,963.  The parties recognize

28

1    and agree that this amount could change based on facts that come to

2    the attention of the parties prior to sentencing.

3        8.    Defendant understands that supervised release is a period

4    of time following imprisonment during which defendant will be subject

5    to various restrictions and requirements.  Defendant understands that

6    if defendant violates one or more of the conditions of any supervised

7    release imposed, defendant may be returned to prison for all or part

8    of the term of supervised release authorized by statute for the

9    offense that resulted in the term of supervised release, which could

10   result in defendant serving a total term of imprisonment greater than

11   the statutory maximum stated above.

12       9.    Defendant understands that, by pleading guilty, defendant

13   may be giving up valuable government benefits and valuable civic

14   rights, such as the right to vote, the right to possess a firearm,

15   the right to hold office, and the right to serve on a jury.

16   Defendant understands that she is pleading guilty to a felony and

17   that it is a federal crime for a convicted felon to possess a firearm

18   or ammunition.  Defendant understands that the conviction in this

19   case may also subject defendant to various other collateral

20   consequences, including but not limited to revocation of probation,

21   parole, or supervised release in another case and suspension or

22   revocation of a professional license.  Defendant understands that

23   unanticipated collateral consequences will not serve as grounds to

24   withdraw defendant's guilty plea.

25       10.   Defendant and her counsel have discussed the fact that, and

26   defendant understands that, if defendant is not a United States

27   citizen, the conviction in this case make it practically inevitable

28   and a virtual certainty that defendant will be removed or deported

from the United States.  Defendant may also be denied United States

citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that

defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and

that no one, including her attorney or the Court, can predict to an

absolute certainty the effect of her conviction on her immigration

status.  Defendant nevertheless affirms that she wants to plead

guilty regardless of any immigration consequences that her plea may

entail, even if the consequence is automatic removal from the United

States.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the

offense to which defendant is agreeing to plead guilty and that the

Forfeitable Property was derived from or acquired as a result of the

illegal activity described herein.  Defendant and the United States

agree to the statement of facts below and agree that this statement

of facts is sufficient to support a plea of guilty to the charge

described in this agreement and to establish the Sentencing

Guidelines factors set forth in paragraph 13 below but is not meant

to be a complete recitation of all facts relevant to the underlying

criminal conduct or all facts known to either party that relate to

that conduct:

INDIVIDUALS, RESIDENCES, and ENTITIES

        Defendant was a resident of Winnetka, California, married

to codefendant Mihran Panosyan.  Codefendant Panosyan maintained no

10

Docusign Envelope ID: 5C95DE0D-773A-43AC-9026-0ABCD858C01A

1  real property, vehicles, or bank accounts in his own name, but rather

2  accessed and used real property, vehicles, and bank accounts in the

3  name of defendant with her knowledge and consent.

4          The Winnetka Residence was a single-family residence

5  located in Winnetka, California.  Defendant resided at the Winnetka

6  Residence with codefendant Panosyan.

7          The Northridge Residence was a single-family residence

8  located in Northridge, California.  Defendant owned the Northridge

9  Residence and had access to and control of the residence together

10 with codefendant Panosyan.

11         The Granada Hills Residence was a single-family residence

12 located in Granada Hills, California.  Defendant owned the Granada

13 Hills Residence, and relatives of codefendant Panosyan resided there.

14         Winnetka Dental Lab ("Winnetka Dental") was purportedly a

15 dental supply business that used the Winnetka Residence as its

16 physical address.  Defendant was the owner and proprietor of Winnetka

17 Dental Lab, according to bank and tax records.

18 THE CRIMINALLY DERIVED PROPERTY

19         Beginning no later than in or around February 2019, and

20 continuing through at least in or around January 2023, codefendant

21 Petros Fichidzhyan knowingly engaged in a scheme with others,

22 including codefendants Juan Esparza and Karpis Srapyan, to defraud

23 Medicare.

24         Defendant was aware that, since at least in or around 2019,

25 codefendant Panosyan was not employed, and that codefendants Panosyan

26 and Srapyan were involved in illegal activity with codefendant

27 Fichidzhyan.

28

1    THE MONEY LAUNDERING CONDUCT

2           After codefendant Fichidzhyan and his coschemers

3    fraudulently obtained payments from Medicare, which were deposited

4    into bank accounts associated with Healthy Life Hospice, Inc.

5    ("Healthy Life"), Prayer of Hope Hospice ("Prayer of Hope"), and

6    Dynamic Hospice Care, Inc. ("Dynamic"), (collectively, the "Sham

7    Hospices"), defendant and her codefendants engaged in monetary

8    transactions knowing that the property involved was criminally

9    derived property.

10          As part of this money laundering scheme, defendant and her

11   coschemers, each aiding and abetting each other, maintained

12   materials associated with the Sham Hospices and materials associated

13   with bank accounts, mobile phones, and means of identification of

14   foreign persons who at one time had been present in the United States

15   on U.S. visas, but had departed the United States ("the Impersonated

16   Identities") at the Winnetka and Northridge Residences.  The

17   Impersonated Identities included B.L., D.G., A.M., and I.S., among

18   others.  The materials included, at the Winnetka Residence, a

19   checkbook for D.G.'s Wells Fargo account ending in x2861; lists of

20   the Impersonated Identities with their names, dates of birth, and

21   social security numbers; driver's licenses and social security cards

22   in the name of I.S.; a voided check for a Prayer of Hope bank

23   account; and internet bills for Prayer of Hope.  They further

24   included, at the Northridge Residence, in the name of D.G. and other

25   Impersonated Identities, social security cards, mail, business

26   registration statements, auto loan statements, printed sheets of

27   personal identifying information, and passwords; a credit card in the

28   name of D.G.; a debit card and checkbook for D.G.'s Wells Fargo

account ending in x2861; and cell phones with identifying information related to Healthy Life, Dynamic, B.L., D.G., I.S., and A.M.

Defendant further co-owned and drove a BMW vehicle that was paid for in part by fraud proceeds laundered through D.G.'s Wells Fargo account ending in x2861.

Defendant further spent proceeds of the fraud, knowing that she was spending funds obtained from a criminal offense.

On or about November 26, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conducted and caused to be conducted a financial transaction that defendant knew involved criminally derived property, and that property was in fact the proceeds of a health care fraud scheme. Specifically, defendant transferred approximately $31,200 from an account at Chase Bank ending in x9283 in the name of Prayer of Hope, on which A.M. was the sole listed signatory, by means of check into an account at Bank of America ending in x0230 in defendant's name and on which defendant was the sole signatory, affecting interstate commerce, as charged in count eighteen of the Indictment.

Pursuant to this money laundering scheme, as relevant conduct, defendant, together with her codefendant spouse Panosyan and others, each aiding and abetting one another, laundered at least $1,141,870 in criminally derived proceeds that they received directly from accounts held in the names of Dynamic and Prayer of Hope. Accounts and assets held solely in defendant's name received at least $2,822,963 of the health care fraud proceeds from the hospice fraud scheme.

1                        SENTENCING FACTORS

2          12.   Defendant understands that in determining defendant's

3    sentence the Court is required to calculate the applicable Sentencing

4    Guidelines range and to consider that range, possible departures

5    under the Sentencing Guidelines, and the other sentencing factors set

6    forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7    Sentencing Guidelines are advisory only, that defendant cannot have

8    any expectation of receiving a sentence within the calculated

9    Sentencing Guidelines range, and that after considering the

10   Sentencing Guidelines and the other § 3553(a) factors, the Court will

11   be free to exercise its discretion to impose any sentence it finds

12   appropriate up to the maximum set by statute for the crime of

13   conviction.

14         13.   Defendant and the United States agree to the following

15   applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G.§ 2S1.1(a)(2) |
| Value of Laundered Funds of More than $550,000 but Less than $3,500,000: | +14/16 | U.S.S.G. §§ 2S1.1(a)(2), 2B1.1(b)(1)(H)/(I) |
| Money Laundering: | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 20 or 22 | |

The United States will agree to a two-level downward adjustment for

acceptance of responsibility (and, if applicable, move for an

additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

only if the conditions set forth in paragraph 4(d) are met and if

defendant has not committed, and refrains from committing, acts

constituting obstruction of justice within the meaning of U.S.S.G.

14

§ 3C1.1, as discussed below.  Subject to paragraph 27 below,
defendant and the United States agree not to seek, argue, or suggest
in any way, either orally or in writing, that any other specific
offense characteristics, adjustments, or departures relating to the
offense level be imposed, except that the parties agree they may
argue for or contest (1) the application of a two-level reduction
under U.S.S.G. § 4C1.1, (2) whether the correct loss category is
U.S.S.G. § 2B1.1(H) or (I); and (3) the application of an up to four-
level reduction for a mitigating role under U.S.S.G. § 3B1.2.
Defendant agrees, however, that if, after signing this agreement but
prior to sentencing, defendant were to commit an act, or the United
States were to discover a previously undiscovered act committed by
defendant prior to signing this agreement, which act, in the judgment
of the United States, constituted obstruction of justice within the
meaning of U.S.S.G. § 3C1.1, the United States would be free to seek
the enhancement set forth in that section and to argue that defendant
is not entitled to a downward adjustment for acceptance of
responsibility under U.S.S.G. § 3E1.1.

    14.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

    15.  Defendant and the United States reserve the right to argue
for a sentence outside the sentencing range established by the
Sentencing Guidelines based on the factors set forth in 18 U.S.C.
§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), and the United
States understands that defendant intends to make such arguments
specifically related to her role in relation to codefendant Panosyan
and based on her family circumstances as the parent of a minor child.

1    WAIVER OF CONSTITUTIONAL RIGHTS

2    16.  Defendant understands that by pleading guilty, defendant

3    gives up the following rights:

4    a.    The right to persist in a plea of not guilty.

5    b.    The right to a speedy and public trial by jury.

6    c.    The right to be represented by counsel — and if

7    necessary have the Court appoint counsel — at trial.  Defendant

8    understands, however, that, defendant retains the right to be

9    represented by counsel — and if necessary have the Court appoint

10   counsel — at every other stage of the proceeding.

11   d.    The right to be presumed innocent and to have the

12   burden of proof placed on the government to prove defendant guilty

13   beyond a reasonable doubt.

14   e.    The right to confront and cross-examine witnesses

15   against defendant.

16   f.    The right to testify and to present evidence in

17   opposition to the charges, including the right to compel the

18   attendance of witnesses to testify.

19   g.    The right not to be compelled to testify, and, if

20   defendant chose not to testify or present evidence, to have that

21   choice not be used against defendant.

22   h.    Any and all rights to pursue any affirmative defenses,

23   Fourth Amendment or Fifth Amendment claims, and other pretrial

24   motions that have been filed or could be filed.

25   WAIVER OF APPEAL OF CONVICTION

26   17.  Defendant understands that, with the exception of an appeal

27   based on a claim that defendant's guilty plea was involuntary, by

28   pleading guilty defendant is waiving and giving up any right to

16

Docusign Envelope ID: 5C95DE0D-772A-43AC-9026-0ABCD858C01A

1    appeal defendant's conviction on the offense to which defendant is

2    pleading guilty.  Defendant understands that this waiver includes,

3    but is not limited to, arguments that the statute to which defendant

4    is pleading guilty is unconstitutional, and any and all claims that

5    the statement of facts provided herein is insufficient to support

6    defendant's plea of guilty.

7    <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

8        18.  Defendant agrees that, provided the Court imposes a total

9    term of imprisonment within or below the range corresponding to an

10    offense level of 22 and the criminal history category calculated by

11    the Court, defendant gives up the right to appeal all of the

12    following: (a) the procedures and calculations used to determine and

13    impose any portion of the sentence; (b) the term of imprisonment

14    imposed by the Court; (c) the fine imposed by the Court, provided it

15    is within the statutory maximum; (d) to the extent permitted by law,

16    the constitutionality or legality of defendant's sentence, provided

17    it is within the statutory maximum; (e) the amount and terms of any

18    restitution order, provided it requires payment of no more than

19    $2,822,963; (f) the term of probation or supervised release imposed

20    by the Court, provided it is within the statutory maximum; and

21    (g) any of the following conditions of probation or supervised

22    release imposed by the Court: the conditions set forth in Second

23    Amended General Order 20-04 of this Court; the drug testing

24    conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

25    alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26        19.  Defendant also gives up any right to bring a post-

27    conviction collateral attack on the conviction or sentence, including

28    any order of restitution, except a post-conviction collateral attack

Docusign Envelope ID: 5C95DE0D-773A-42AC-9026-0ABCD858C01A

1  based on a claim of ineffective assistance of counsel, a claim of

2  newly discovered evidence, or an explicitly retroactive change in the

3  applicable Sentencing Guidelines, sentencing statutes, or statutes of

4  conviction.  Defendant understands that this waiver includes, but is

5  not limited to, arguments that the statute to which defendant is

6  pleading guilty is unconstitutional, and any and all claims that the

7  statement of facts provided herein is insufficient to support

8  defendant's plea of guilty.

9       20.  The United States agrees that, provided (a) all portions of

10  the sentence are at or below the statutory maximum specified above

11  and (b) the Court imposes a term of imprisonment within or above the

12  range corresponding to an offense level of 14 and the criminal

13  history category calculated by the Court, the United States gives up

14  its right to appeal any portion of the sentence, with the exception

15  that the United States reserves the right to appeal the amount of

16  restitution ordered if that amount is less than $2,822,963.

17                  RESULT OF WITHDRAWAL OF GUILTY PLEA

18       21.  Defendant agrees that if, after entering a guilty plea

19  pursuant to this agreement, defendant seeks to withdraw and succeeds

20  in withdrawing defendant's guilty plea on any basis other than a

21  claim and finding that entry into this plea agreement was

22  involuntary, then (a) the United States will be relieved of all of

23  its obligations under this agreement; and (b) should the United

24  States choose to pursue any charge or any civil, administrative, or

25  regulatory action that was either dismissed or not filed as a result

26  of this agreement, then (i) any applicable statute of limitations

27  will be tolled between the date of defendant's signing of this

28  agreement and the filing commencing any such action; and

Docusign Envelope ID: 5C95BE0D-772A-42AC-9026-0ABCD858C01A

(ii) defendant waives and gives up all defenses based on the statute

of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this

agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

22.  Defendant agrees that if the count of conviction is

vacated, reversed, or set aside, both the United States and defendant

will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

23.  This agreement is effective upon signature and execution of

all required certifications by defendant, defendant's counsel, and a

Trial Attorney for the U.S. Department of Justice.

BREACH OF AGREEMENT

24.  Defendant agrees that if defendant, at any time after the

signature of this agreement and execution of all required

certifications by defendant, defendant's counsel, and a Trial

Attorney, knowingly violates or fails to perform any of defendant's

obligations under this agreement ("a breach"), the United States may

declare this agreement breached.  All of defendant's obligations are

material, a single breach of this agreement is sufficient for the

United States to declare a breach, and defendant shall not be deemed

to have cured a breach without the express agreement of the United

States in writing.  If the United States declares this agreement

breached, and the Court finds such a breach to have occurred, then:

(a) if defendant has previously entered a guilty plea pursuant to

this agreement, defendant will not be able to withdraw the guilty

1    plea, and (b) the United States will be relieved of all its

2    obligations under this agreement.

3         25.    Following the Court's finding of a knowing breach of this

4    agreement by defendant, should the United States choose to pursue any

5    charge or any civil, administrative, or regulatory action that was

6    either dismissed or not filed as a result of this agreement, then:

7              a.    Defendant agrees that any applicable statute of

8    limitations is tolled between the date of defendant's signing of this

9    agreement and the filing commencing any such action.

10             b.    Defendant waives and gives up all defenses based on

11   the statute of limitations, any claim of pre-indictment delay, or any

12   speedy trial claim with respect to any such action, except to the

13   extent that such defenses existed as of the date of defendant's

14   signing this agreement.

15             c.    Defendant agrees that: (i) any statements made by

16   defendant, under oath, at the guilty plea hearing (if such a hearing

17   occurred prior to the breach); (ii) the agreed to factual basis

18   statement in this agreement; and (iii) any evidence derived from such

19   statements, shall be admissible against defendant in any such action

20   against defendant, and defendant waives and gives up any claim under

21   the United States Constitution, any statute, Rule 410 of the Federal

22   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

23   Procedure, or any other federal rule, that the statements or any

24   evidence derived from the statements should be suppressed or are

25   inadmissible.

26

27

28

1    COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2    OFFICE NOT PARTIES

3        26.  Defendant understands that the Court and the United States

4    Probation and Pretrial Services Office are not parties to this

5    agreement and need not accept any of the United States' sentencing

6    recommendations or the parties' agreements to facts or sentencing

7    factors.

8        27.  Defendant understands that both defendant and the United

9    States are free to: (a) supplement the facts by supplying relevant

10   information to the United States Probation and Pretrial Services

11   Office and the Court, (b) correct any and all factual misstatements

12   relating to the Court's Sentencing Guidelines calculations and

13   determination of sentence, and (c) argue on appeal and collateral

14   review that the Court's Sentencing Guidelines calculations and the

15   sentence it chooses to impose are not error, although each party

16   agrees to maintain its view that the calculations in paragraph 13 are

17   consistent with the facts of this case.  While this paragraph permits

18   both the United States and defendant to submit full and complete

19   factual information to the United States Probation and Pretrial

20   Services Office and the Court, even if that factual information may

21   be viewed as inconsistent with the facts agreed to in this agreement,

22   this paragraph does not affect defendant's and the United States'

23   obligations not to contest the facts agreed to in this agreement.

24       28.  Defendant understands that even if the Court ignores any

25   sentencing recommendation, finds facts or reaches conclusions

26   different from those agreed to, and/or imposes any sentence up to the

27   maximum established by statute, defendant cannot, for that reason,

28   withdraw defendant's guilty plea, and defendant will remain bound to

Docusign Envelope ID: 5C95DE0D-772A-42AC-9026-0ABCD858C01A

1    fulfill all defendant's obligations under this agreement.  Defendant

2    understands that no one — not the prosecutor, defendant's attorney,

3    or the Court — can make a binding prediction or promise regarding the

4    sentence defendant will receive, except that it will be between the

5    statutorily mandated sentence and the statutory maximum.

6                        NO ADDITIONAL AGREEMENTS

7         29.  Defendant understands that, except as set forth herein,

8    there are no promises, understandings, or agreements between the

9    United States and defendant or defendant's attorney, and that no

10   additional promise, understanding, or agreement may be entered into

11   unless in a writing signed by all parties or on the record in court.

12   //

13   //

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Docusign Envelope ID: 5C9BDE0D-772A-43AC-9026-0ABCD858C01A

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        30.    The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    BILAL A. ESSAYLI
     United States Attorney

9

10   _____          6/23/25
                                                 _____
     SARAH E. EDWARDS                            Date
11   ALLISON L. MCGUIRE
     MICHAEL BACHARACH
12   Trial Attorneys

13                                                       6/22/2025
     _____          _____
14   SUSANNA HARUTYUNYAN                         Date
     Defendant
15                                                       06/22/2025
     _____          _____
16   MARIYA MELKONYAN                            Date
     Attorney for Defendant SUSANNA
17   HARUTYUNYAN

18

19

20

21

22

23

24

25

26

27

28

                                    23

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough
time to review and consider this agreement, and I have carefully and
thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____                _____
SUSANNA HARUTYUNYAN                             6/22/2025
Defendant                                       Date

1                    CERTIFICATION OF INTERPRETER

2        I, ___Mariya Melkonyan_____, am fluent in the written and
spoken English and Armenian languages.  I accurately translated this

3    entire agreement from English into Armenian to defendant HARUTYUNYAN

4    on this date.

5

6                                                    June 22, 2025
7    _____    _____
     INTERPRETER                          Date

8

9                CERTIFICATION OF DEFENDANT'S ATTORNEY

10       I am SUSANNA HARUTYUNYAN's attorney.  I have carefully and

11   thoroughly discussed every part of this agreement with my client.

     Further, I have fully advised my client of her rights, of possible
12
     pretrial motions that might be filed, of possible defenses that might
13
     be asserted either prior to or at trial, of the sentencing factors
14
     set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
15
     provisions, and of the consequences of entering into this agreement.
16
     To my knowledge: no promises, inducements, or representations of any
17
     kind have been made to my client other than those contained in this
18
     agreement; no one has threatened or forced my client in any way to
19
     enter into this agreement; my client's decision to enter into this
20
     agreement is an informed and voluntary one; and the factual basis set
21
     forth in this agreement is sufficient to support my client's entry of
22
     a guilty plea pursuant to this agreement.
23

24                                                   June 22, 2025
     _____    _____
25   MARIYA MELKONYAN                     Date
     Attorney for Defendant SUSANNA
26   HARUTYUNYAN

27

28

                                   25